No. 99-521

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 216N

RICK EASTMAN,

Petitioner and Appellant,

v.

INSURANCE COMPANY OF NORTH AMERICA,

Respondent and Insurer for

FAMILIAN NORTHWEST,

Employer.

APPEAL FROM: Workers' Compensation Court, State of Montana

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

R. Russell Plath; Halverson, Sheehy & Plath, Billings, Montana

For Respondent:

Leo S. Ward; Browning, Kaleczyc, Berry & Hoven, Helena, Montana

Submitted on Briefs: January 13, 2000

Decided: August 10, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Appellant Rick Eastman (Eastman) appeals from the judgment of the Workers' Compensation Court, determining that Eastman was not entitled to rehabilitation benefits for his vo-tech training and that he was not entitled to attorney fees and costs. We affirm.

¶3 The sole issue on appeal is whether the Workers' Compensation Court erred in determining that Eastman was not entitled to 104 weeks of rehabilitation benefits for a two-year Major Appliance Repair and HVAC vo-tech program when the insurer did not formulate a rehabilitation plan for Eastman and the court found Eastman's rehabilitation plan did not represent reasonable vocational goals and reemployment and wage potential pursuant to § 39-71-2001(1), MCA (1991).[1]

## Standard of Review

¶4 This Court employs two standards of review for Workers' Compensation Court decisions: Findings of Fact are reviewed to determine if they are supported by substantial, credible evidence, and conclusions of law are reviewed to determine if they are correct. *See* Turjan v. Valley View Estates (1995), 272 Mont. 386, 390, 901 P.2d 76, 79 (citation omitted).

## Factual and Procedural Background

¶5 In 1992, Eastman suffered an employment-related back injury. His employer, Familian Northwest, was insured by Insurance Company of North America (North America). North America accepted liability and paid him medical and wage-loss benefits. In 1994, he underwent surgery for the injury and was subsequently rated at a 20% impairment level.

¶6 Eastman's time-of-injury job had been classified as heavy labor, and after his injury he was restricted to light to medium work, precluding him from returning to his time-of-injury job. Eastman received temporary total disability benefits until December 1993, when he began receiving partial disability benefits. At that time, North America told Eastman to contact them if he was interested in retraining, but the issue of retraining or rehabilitation did not arise until 1996.

¶7 In August 1996, Eastman's attorney contacted a representative of North America, Michele Fairclough (Fairclough), requesting initiation of "temporary total rehab benefits." In November 1996, Eastman and his attorney spoke to Fairclough and informed her that Eastman was meeting with the State's vocational rehabilitation agency to develop a retraining plan for small appliance repair. Eastman's counsel memorialized the conversation in a letter to Fairclough dated November 4, 1996 as follows:

> [Eastman] is meeting with SRS to develop a rehab plan for small appliance repair. He is going to provide the information to me which I will then forward to you. It is my understanding that CIGNA will initiate Total Rehab benefits once Rick is enrolled in a full-time retraining plan, and that the job he is retraining to has been approved by his treating physician.

In January 1997, Eastman began a two-year associate's degree program at the Billings Vo-tech in Major Appliance Repair and heating, ventilation and air conditioning (HVAC) (hereinafter "vo-tech program"). The first year of the program was devoted to major appliance repair and the second year consisted of the HVAC program. He informed Fairclough of his intention of pursuing this program in December 1996.

¶8 In February 1997, Fairclough referred Eastman's file to Crawford and Company (Crawford), a rehabilitation provider, to determine whether major appliance and HVAC repair were consistent with Eastman's physical restrictions. Patricia Murray (Murray), a Crawford employee, prepared a job analysis for major appliance service technicians and forwarded it to Eastman's treating physician, who disapproved the position because Eastman could not tolerate the physical demands required of the service position.

¶9 When Eastman discovered his physician had disapproved the program, he asked his vo-tech instructor Dave Foster (Foster) to help him convince Crawford that he would be employable in HVAC sales upon graduating from the program. In April 1997, Murray met with Eastman and Foster to discuss the type of employment Eastman could expect to find

upon graduation. Foster said that vo-tech graduates had a 100% placement rate and that 20% of graduates found jobs in sales rather than service positions.

¶10 Eastman's physician approved the sales position because it required only light labor. Once the sales position was medically approved, Murray conducted labor market research to determine the availability of HVAC sales positions. She searched for positions only in Billings, because Eastman had indicated his unwillingness to relocate. She found that Foster's claim that 20% of vo-tech graduates found sales positions was not true in the Billings area. Based on Murray's findings, North America rejected the vo-tech program and provided no further rehabilitation services and did not pay rehabilitation benefits.

¶11 Eastman contested North America's denial of rehabilitation benefits and petitioned the Workers' Compensation Court for payment of the vo-tech program and also requested attorney fees and costs. The court held trial on the matter on February 2, 1998, after Eastman had completed his first year of training, and again on April 26, 1999, after Eastman had graduated from the vo-tech program. At the close of the first phase of the trial, the court ruled from the bench that under Eastman's rehabilitation plan-attending the vo-tech program-he would only be eligible for HVAC service jobs exceeding his physical abilities because sales positions were virtually nonexistent in Billings and that his plan was unreasonable in light of Eastman's physical restrictions. The judge encouraged the parties to work together to develop and implement a new plan and postponed a final decision until the parties had agreed upon a new plan.

¶12 In April 1998, the parties informed the court that Eastman had decided to go ahead with the vo-tech program and was unwilling to consider alternative options. The parties had agreed that rehabilitation assistance would cease at this point and that North America would offer Eastman rehabilitation assistance in finding employment upon graduation.

¶13 Eastman received his degree in December 1998. Upon graduation, he renewed his petition to the Workers' Compensation Court to retroactively award rehabilitation benefits for the vo-tech program. The court agreed to a hearing on the issue of benefits for his job search but ordered that "I do not intend to reopen or reconsider my . . . finding the HVAC program inappropriate."

¶14 At the second phase of the trial, Eastman testified that he had not been able to find employment in a sales position following graduation. Instead, in February 1999, he and his wife purchased a building and opened their own business-The Appliance Shack. Eastman

buys used appliances, reconditions them, and sells them. Eastman testified that this work does not exceed his physical restrictions.

¶15 The court found that Eastman's degree program did not assist him in opening this business and further that his rehabilitation plan had not been reasonable in any case. The court found that North America had not acted unreasonably in refusing to pay rehabilitation benefits. The court noted that Eastman had not been interested when North America initially approached him about a rehabilitation program. When Eastman decided he wanted retraining, the court found that North America acted reasonably in approving his plan subject to medical confirmation and that the potential job would be appropriate in light of his physical restrictions. The court also found that North America acted reasonably in conducting additional research when Eastman changed his plan from small appliance repair to major appliance/HVAC service/sales and ultimately concluding that this field was not vocationally appropriate.

¶16 The court concluded that Eastman was not entitled to 104 weeks of rehabilitation benefits for the vo-tech program. The court also denied Eastman's request for attorney fees and costs.

## Discussion

¶17 Did the Workers' Compensation Court err in determining that Eastman was not entitled to 104 weeks of rehabilitation benefits for a two-year Major Appliance Repair and HVAC vo-tech program when the insurer did not formulate a rehabilitation plan for Eastman and the court found Eastman's rehabilitation plan did not represent reasonable vocational goals and reemployment and wage potential pursuant to § 39-71-2001(1), MCA (1991)?

¶18 Eastman argues that North America failed to prepare a rehabilitation plan, which is a prerequisite to obtaining rehabilitation benefits under § 39-71-2001(1), MCA. He urges that we adopt the rule that when a vocational consultant fails to prepare a rehabilitation plan, the injured worker should be allowed to present a plan to the court. Eastman argues that the worker's plan should be approved unless the insurer can establish by clear and convincing evidence that the worker's plan does not have a reasonable vocational goal that will provide for reemployment and wage potential. Eastman contends that the "clear and convincing" standard should be imposed as a penalty when the designated vocational consultant does not prepare a rehabilitation plan.

¶19 We agree with North America that Eastman's claim is disingenuous. The record clearly shows that Eastman was determined to pursue his rehabilitation plan-the vo-tech program-and showed no interest in an alternative rehabilitation plan. Even after the court found that Eastman's plan was unreasonable and ordered the parties to work out a new plan, Eastman continued with the vo-tech program and was unable to work out another plan with the rehabilitation provider. The insurer in this case did not attempt to prevent the rehabilitation provider from formulating a rehabilitation plan. Any attempt to formulate an alternative rehabilitation plan would have been futile in light of Eastman's determination to finish the vo-tech program. The need to "punish" the insurer for not formulating a rehabilitation plan by adopting a "clear and convincing" standard does not arise under these facts.

¶20 Further, Eastman's contention that the lack of a rehabilitation plan prepared by the rehabilitation provider was somehow attributable to North America's control and direction of Crawford lacks merit. The record reflects that Fairclough did not attempt to control Crawford's evaluation of Eastman's plan.

¶21 We note that Eastman was allowed to present his rehabilitation plan to the Workers' Compensation Court, just as Eastman urges should be done when the rehabilitation provider does not prepare a rehabilitation plan. The parties operated under the defacto rehabilitation plan formulated by Eastman-the vo-tech program-and the court reviewed that plan as if it had been a plan prepared by a rehabilitation provider. Upon reviewing Eastman's rehabilitation plan, the court found the plan unreasonable because Eastman was physically unqualified for HVAC service and because no job market existed in Billings for HVAC sales. We decline Eastman's suggestion that we adopt the *Leastman* decision, a Workers' Compensation Court decision that was not appealed and was in fact followed in this case. Here, the Workers' Compensation Court engaged in judicial review of Eastman's rehabilitation plan despite the fact that the rehabilitation provider did not formulate a plan.

¶22 We turn next to the issue of whether the Workers' Compensation Court's determination that Eastman's rehabilitation plan was not reasonable was supported by substantial and credible evidence. Eastman contends that it was not and that he had proven at trial that he had a reasonable vocational goal at the time he started the vo-tech program, that he proved that his earning capacity had been substantially reduced due to a job-related disability, that his earning capacity could be substantially improved by furthering his education, and that he was qualified by training for the program he enrolled in. North America counters that substantial and credible evidence was presented demonstrating that

Eastman's plan was unreasonable and would not result in reemployment and wage potential, and that Eastman's insistence on finishing the vo-tech program was unreasonable in light of the Workers' Compensation Court's disapproval of the program.

¶23 Section 39-71-2001(1)(c), MCA, states in relevant part that a rehabilitation plan must show that "the injured worker has reasonable vocational goals and a reemployment and wage potential with rehabilitation." When his physician disapproved the HVAC service position, Eastman changed his plan to HVAC sales even though he had no sales experience, no concept of the labor market, and the vo-tech program did not include any sales component. While Eastman's witness Walter Ware, a vo-tech instructor, agreed with Foster that approximately twenty percent of the vo-tech program's graduates found jobs in sales positions, he also testified that he was not aware of anyone with Eastman's physical restrictions working in a sales position and that the vo-tech currently had no listings for HVAC sales on its job board. Eastman also admitted that he was not aware of anyone with his physical restrictions working in HVAC sales. A review of the transcript shows that North America presented several industry witnesses who testified that HVAC sales positions were unavailable in Billings and that HVAC service jobs required lifting beyond Eastman's 50-pound limitation.

¶24 Eastman also contends that the Workers' Compensation Court's finding was not supported by substantial and credible evidence because he was working within his physical restrictions at the Appliance Shack and that the venture had been successful for him. The Workers' Compensation Court found that even if Eastman was working within his physical restrictions at the Appliance Shack, the vo-tech program was not a reasonable rehabilitation plan. We agree. Eastman had the training to repair major appliances from his year of vo-tech training in 1981 and testified that he had done such work in the past. He was not performing HVAC repair at the Appliance Shack. The record shows that Eastman could have opened the Appliance Shack without the vo-tech program, particularly without the second year of the program.

¶25 Finally, we reject Eastman's equitable estoppel claim. The case cited by Eastman, Kuzura v. State Fund (1996), 279 Mont. 223, 231, 928 P.2d 136, 141, states that "[e]quitable estoppel applies when an employer or insurer has taken some positive action which either prevents a claimant from filing a timely claim or leads the claimant reasonably to believe she need not file such a claim." In Turjan v. Valley View Estates (1995), 272 Mont. 386, 395, 901 P.2d 76, 82 (citation omitted), we further held that "'the party . . . to be estopped [must] have knowledge that he is misleading the claimant and an

intention to mislead the claimant to his detriment.'" Based on our finding that North America did not prevent the rehabilitation provider from formulating a rehabilitation plan for Eastman and that the denial of rehabilitation benefits for Eastman is attributable to his insistence on pursuing the vo-tech program despite the fact that the Workers' Compensation Court had found that plan unreasonable, the doctrine of equitable estoppel does not arise under these circumstances. North America neither prevented Eastman from pursuing any benefits nor misled Eastman to his detriment.

¶26 The judgment of the Workers' Compensation Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ KARLA M. GRAY

Justice William E. Hunt, Sr. dissents from the majority opinion.

¶27 The majority opinion allows an insurer to wait and watch while an injured worker attempts on his own to rehabilitate himself and then pounce out at the last minute, just in time to avoid payment. Under the majority's decision, an insurer bears no risk but has everything to gain if the rehabilitation provider ignores its statutory obligations.

¶28 The Workers' Compensation Act provides no remedy for an injured worker who clearly is entitled to rehabilitation benefits, but the insurer refuses to allow a rehabilitation plan to be prepared. Whenever an insurer, or the rehabilitation provider it hires and pays for, fails to provide a rehabilitation plan for an injured worker, that injured worker must necessarily have the option of submitting his own rehabilitation plan. To hold otherwise would allow an insurer to effectively deny benefits to a deserving injured worker by simply not filing a rehabilitation plan.

¶29 The majority's premise that Eastman's uncooperativeness justifies the rehabilitation

provider's failure to formulate a rehabilitation plan ignores statutory law. Section 39-71-2001(6), MCA (1991), expressly provides that the rehabilitation provider "shall continue to work with and assist the injured worker until the rehabilitation plan is completed." The statutory obligation to prepare a rehabilitation plan rests squarely with the designated rehabilitation provider. Further, if at any point in this process the insurer feels the injured worker is uncooperative, it may give a 14-day notice to the worker prior to termination of rehabilitative benefits. Section 39-71-1032, MCA (1991). Non-cooperation does not relieve the rehabilitation provider of its duty to provide a rehabilitation plan.

¶30 Here, the rehabilitation provider has never provided Eastman with a rehabilitation plan. Rather, the insurance company is allowed to attack Eastman's proposed plan without providing any alternatives. The majority seems to find something deplorable in Eastman's determination to rehabilitate himself while ignoring the rehabilitation provider's failure to comply with its statutory obligations. This line of reasoning ignores that it is the obligation of the insurer and the rehabilitation provider it hires, not the injured worker, to provide rehabilitative services.

¶31 I would reverse the Workers' Compensation Court's decision.


/S/ WILLIAM E. HUNT, SR.


1. Unless otherwise noted, the 1991 code is cited throughout this Opinion.