No.   96-016

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

ELIZABETH M. KUZARA,

       Petitioner and Appellant,

  v.

STATE COMPENSATION INSURANCE FUND,

       Respondent and Insurer for

SPRING CREEK COAL COMPANY,

       Employer and Respondent.

**FILED**

NOV 14 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court,
               The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           Elizabeth M. Kuzara, Sheridan, Wyoming (Pro Se)

       For Respondent:

           Charles G. Adams, State Compensation Insurance
           Fund, Helena, Montana


                 Submitted on Briefs:   October 24, 1996

                       Decided:   November 14, 1996

Filed:

                         Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Elizabeth Kuzara appeals the judgment of the Workers' Compensation Court granting a directed verdict in favor of the State Compensation Insurance Fund (State Fund). We reverse and remand with instructions consistent with this opinion.

The sole issue on appeal is whether the Workers' Compensation Court erred when it granted the State Fund's motion for a directed verdict because Elizabeth Kuzara presented insufficient proof of notice of a work-related injury as required by § 39-71-603, MCA (1993).

FACTUAL BACKGROUND

All references to the facts of this case are obtained from the sworn testimony of Elizabeth Kuzara at the trial held before the Workers' Compensation Court. It is noted that the judge found Kuzara to be a credible witness, stating, "I can at this point and do assume that she is telling me the truth about her conversations. And indeed I don't have any reason to disbelieve her and sitting here listening to her and observing her, she impresses me as credible up to this point." It is further noted that the State Fund did not offer any testimony or evidence at trial rebutting or contradicting the testimony of Kuzara, although it had the opportunity and chose not to do so.

Kuzara was employed as a dragline groundsman by the Spring Creek Coal Company at an open pit coal mine near Decker, Montana. Spring Creek is insured by the State Fund. Kuzara claims that she sustained a work-related injury on July 18, 1993. While cleaning dried mud from a dragline machine shoe, Kuzara suffered intense

2

pain in her lower back, through her hips, and down her right leg. At trial she described the pain as "enough that I had to cease what I was doing--it was like getting an electrical shock almost." No one other than Kuzara witnessed this incident.

Kuzara worked with Ed Bebee, a dragline operator. Kuzara testified that she did not specifically tell Bebee, a co-worker, about the July 18 incident on the day that it occurred. However, the next day Kuzara could not complete her shift due to back pain. Bebee allowed her to rest inside his dragline cab for the remainder of the shift. While in the cab, Kuzara and Bebee talked about their back injuries for several hours. During that discussion Kuzara informed Bebee, "I thought I'd hurt my back." She also testified, "I told him at that time that--as far as what led to this, that I thought I had done it when I was down cleaning on the shoe."

Spring Creek employees participated in a gain-sharing program. Spring Creek set aside a percentage of its profits to be distributed to employees every three months. The program was based on a number of factors, including the number of lost-time accidents reported by employees. Thus, when an employee reported an accident, lost time was subtracted from the employee's overall gain share, and all other employees' shares were also reduced. In the quarter immediately preceding her injury, Kuzara earned approximately $950 through Spring Creek's gain-sharing program.

Kuzara was not scheduled to work on July 20 and 21, 1993. Because she had experienced difficulty sleeping since July 18 and was still in pain, Kuzara called Dr. Robert Wood, a neurosurgeon in

3

Billings, Montana, and scheduled an appointment for August 5, 1993. Kuzara worked for the next two weeks after the dragline incident but did not inform Spring Creek or any co-workers about her back problem.

On August 4, 1993, Kuzara told her supervisor, Clark Izzard, about her August 5 doctor's appointment but did not inform him of the reason for it. During the summer of 1993, rumors had circulated among Spring Creek employees that a layoff might occur. Kuzara feared that if she reported her injury to Spring Creek she would be targeted as an injured employee and would be laid off.

Kuzara drove to Billings, Montana, on August 5 for her appointment with Dr. Wood. Following a myelogram, Dr. Wood diagnosed Kuzara with a herniated disc. He recommended surgery to treat the herniated disc. Kuzara then realized she would have to report her injury to Spring Creek.

On August 8, 1993, Kuzara returned home to Decker, Montana. According to Kuzara, she called Izzard at home and told him that she would not be able to come into work the next day. When asked why, Kuzara explained that she had a bad disc and would require back surgery. Kuzara stated at trial that she volunteered the following information to Izzard: "[The injury] was work related, but [Izzard] was--he was asking how it happened. I told him it was from a combination of things over a period of time, but most recently from lifting several weeks earlier, meaning about three weeks earlier, two to three weeks earlier." Kuzara did not say her injury happened at work but told Izzard that her injury was work related. She informed Izzard that she was getting sick and could

4

not talk anymore and that, if Izzard needed more information concerning her injury, he should contact Bebee, "because [Bebee] knew more than anyone else about [the situation]."

That same evening, Kuzara also called Gene Kilpatrick, Spring Creek's department superintendent, and told him much of the same information she had told Izzard. At trial, Kuzara testified that she told Kilpatrick, "[The injury] was from operating equipment, from slips and falls. Told him it was mostly from lifting the power cable within the last couple of weeks, several weeks."

On August 9, 1993, Kuzara called Don Gibboney, Human Resources Manager at Spring Creek. She called him "because I knew I needed to inform him that there was probably some kind of paperwork that needed to be done regarding this, and that they were the folks to call and they'd take care of it." She informed Gibboney that her back problem was work related, had been determined to be a surgical condition, and was "from a combination of things over a period of time." Gibboney advised Kuzara to take sick leave and file a claim with Aetna Life and Casualty Company (Aetna), Spring Creek's group health insurance carrier.

When Gibboney questioned Kuzara about how much sick leave she had accrued, Kuzara responded that she did not know. Gibboney transferred Kuzara to Connie Haugen, who worked in Spring Creek's Human Resources Department. Kuzara informed Haugen that her back injury was work related. Then, according to Kuzara, Haugen stated that "she would--they would take care of everything. They would handle it all."

5

On August 10, 1993, Kuzara spoke with Kilpatrick again. She claims she told him three times that her condition was work related. Spring Creek placed Kuzara on sick leave and encouraged her to file a claim with Aetna. Spring Creek's Aetna policy did not cover work-related injuries.

Dr. Wood performed back surgery on Kuzara on August 11, 1993, and released her on August 17, 1993. By mid-September, Kuzara had not received any paperwork regarding the injury she claims that she reported to Izzard, Kilpatrick, Gibboney, and Haugen on August 8-10, 1993. Concerned that she had not heard from Spring Creek, Kuzara drove to work on September 20, 1993, and informed Steve Velasquez, Spring Creek Safety Director, the details of the July 18 dragline incident. This conversation was the first time Kuzara gave specific notice to a Spring Creek supervisor of the exact time, place and nature of her injury. At trial Kuzara testified that she believed she told Velasquez that her condition "was from that incident . . . and was brought on also from just years of wear and tear from the mine."

On October 15, 1993, Kuzara received a phone call asking her to come to Sheridan, Wyoming, to meet with Kilpatrick, Haugen, and Gibboney. In Sheridan, Kuzara learned that her employment would be terminated on October 16, 1993, and that she had no remaining sick leave with Spring Creek. Kuzara contacted the State Fund and was informed that Spring Creek had not filed a workers' compensation claim for her July 18 injury. Kuzara filed a claim with the State Fund which it denied.

6

Kuzara filed a petition with the Workers' Compensation Court seeking an award of benefits under the Montana Workers' Compensation Act. On November 14, 1995, the matter was heard before the Workers' Compensation Court. Following Kuzara's testimony, the State Fund moved for a directed verdict, arguing that based on Kuzara's testimony there was insufficient evidence to establish that she had provided her employer with sufficient notice of an injury as required by § 39-71-603, MCA (1993). The following exchange then occurred between Kuzara and the court:

THE COURT: Is [the September 20, 1993, discussion with Velasquez] the first time that you told him [about the July 18 incident] or told anybody that?

KUZARA: That I was that specific?

THE COURT: Yeah.

KUZARA: That I was that specific about it, I informed-- when I spoke with Clark --

MR. SHEEHY: August 8th?

KUZARA: Yes, August 8th, with Clark and Gene, and then Don Gibboney on August 9th, I wasn't that specific.

THE COURT: As I recall your testimony, you said you told him that the latest thing had happened while you were lifting several weeks ago.

KUZARA: Right.

THE COURT: And that is as specific you got then?

. . . .

KUZARA: Right.

THE COURT: Okay. So at the time you talked to these fellows on August 8th, 9th, and 10th, you weren't keying specifically in on the work that you were doing with the shoe and lifting the grates?

KUZARA: No. I didn't.

7

THE COURT: Were you keying in on that day to the--at least the date that this all started, or were you even vague about that at the time?

KUZARA: I was vague about that. I told them several weeks.

Following this discussion, Kuzara's counsel agreed that there was no additional testimony that would prove Kuzara had provided a more specific report of an injury having occurred on July 18, 1993.

The court granted the State Fund's motion for a directed verdict. In a judgment issued on November 27, 1995, the court deemed Kuzara's testimony to be credible. The court explained in its findings of fact that Kuzara's notice was insufficient because it was too vague. Kuzara admitted at trial that at the time of her conversations on August 8, 9 and 10, she had identified no specific incident or series of incidents from which her work-related problems arose and did not do so until after the thirty-day period had expired.

Kuzara, proceeding pro se, appeals the judgment granting the State Fund's motion for a directed verdict.

STANDARD OF REVIEW

The Workers' Compensation Court's determination that Kuzara had presented insufficient evidence to establish notice is a finding of fact. A reviewing court uses a three-step test to determine whether the findings are clearly erroneous. First, if a court's findings are not supported by substantial credible evidence, they are clearly erroneous. Second, if a court has misapprehended the effect of the evidence, its findings are clearly erroneous. Third, if a review of the record leaves the reviewing

8

court with the definite and firm conviction that a mistake has been committed, the lower court's findings are clearly erroneous. Spence v. Ortloff (1995), 271 Mont. 533, 535, 898 P.2d 1232, 1233 (citing Interstate Production Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

DISCUSSION

Did the Workers' Compensation Court err when it granted the State Fund's motion for a directed verdict because it concluded that Kuzara had provided Spring Creek with insufficient notice of an injury as required by § 39-71-603, MCA (1993)?

Kuzara argues that she provided sufficient notice of her work-related injury to Spring Creek. Spring Creek and the State Fund counter that Kuzara failed to provide notice of the specific time, place and nature of her injury as required by § 39-71-603, MCA (1993). We agree with Kuzara.

Workers' compensation laws in effect at the time of a claimant's injury are controlling. Crittendon v. Terri's Restaurant & Lounge (1991), 247 Mont. 293, 295, 806 P.2d 534, 535. Because Kuzara claims she was injured on July 18, 1993, this case is governed by the notice provision of § 39-71-603, MCA (1993), which states:

> **Notice of injuries other than death to be submitted within thirty days.** No claim to recover benefits under the Workers' Compensation Act, for injuries not resulting in death, may be considered compensable unless, within 30 days after the occurrence of the accident which is claimed to have caused the injury, notice of time and place where the accident occurred and the nature of the injury is given to the employer or the employer's insurer by the injured employee or someone on the employee's behalf. <u>Actual knowledge of the accident and injury on the part of the employer or the employer's managing agent</u>

9

or superintendent in charge of the work upon which the injured employee was engaged at the time of the injury is equivalent to notice.  [Emphasis supplied.]

The determinative issue in this case is notice.  The evidence presented by Kuzara indicates that Spring Creek operated under an informal policy that discouraged its employees from reporting work-related injuries.  Spring Creek's gain-sharing plan discouraged employees from reporting injuries because if one employee reported a work-related injury, all employees stood to lose a percentage of their gain-sharing profits.

Spring Creek argues that Kuzara's report of a work-related injury was vague in terms of specific time, place, and event.  On August 8, 1993, Kuzara called her supervisor, Clark Izzard, and informed him that she was going to require back surgery.  Kuzara told Izzard that her injury was work related.

While Kuzara's statements to Izzard on August 8 could have been more specific in terms of time, place, and event, Izzard could have learned more about what happened by contacting Bebee, as Kuzara suggested.  When Kuzara called Izzard on August 8, 1993, Kuzara informed him that she was in significant pain from a post-operative headache and was unable to speak on the telephone any longer.  She informed Izzard that if he wanted any additional information, he should contact Bebee, who knew the whole story.  Izzard made no attempt to contact Bebee.  Had he done so, as Kuzara suggested, Spring Creek could have learned the details of Kuzara's injury on August 8, 1993, which she had already explained to Izzard were work related.

10

We conclude that during her case-in-chief Kuzara supplied sufficient evidence of notice of her work-related injury to her employer when she informed Izzard on August 8, 1993, that he should contact Bebee for more information. However, respondents should have the opportunity to present evidence to rebut Kuzara's claim that she gave Spring Creek sufficient notice of her injury. Therefore, we remand this issue to the Workers' Compensation Court.

Notwithstanding that the Workers' Compensation Court found Kuzara to have testified truthfully and to be a credible witness, the court granted respondents a directed verdict. We conclude that the Workers' Compensation Court erred in misapprehending the evidence that supports Kuzara's claim of having given sufficient notice of her work-related injury.

As a secondary issue to the notice provisions of § 39-71-603, MCA (1993), we also consider principles of estoppel. Equitable estoppel applies when an employer or insurer has taken some positive action which either prevents a claimant from filing a timely claim or leads the claimant reasonably to believe she need not file such a claim. Davis v. Jones (1983), 203 Mont. 464, 466, 661 P.2d 859, 860. Six elements make up the doctrine of equitable estoppel:

> 1. There must be conduct amounting to a representation or a concealment of material facts;
>
> 2. These facts must be known to the party estopped at the time of the conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him;
>
> 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when it was acted upon by him;

11

4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon;

5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it;

6. He must in fact act upon it in such a manner as to change his position for the worse, in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

Davis, 661 P.2d at 860-61.

We now apply the facts provided in Kuzara's testimony, which the Workers' Compensation Court found to be credible, to the six elements of estoppel. First, Spring Creek represented to Kuzara and concealed from her material facts. It did so on August 10, 1993, when Haugen stated that Spring Creek would take care of everything and when she also encouraged Kuzara to file a nonwork-related claim with Aetna. Haugen had to know that for a claim to be compensable by Aetna it could not be work related. Haugen did not inform Kuzara of this Aetna policy provision.

Second, Spring Creek was aware or should have been aware of the effect its representation and concealment of material facts would have on Kuzara. After being told by Haugen that Spring Creek would take care of everything, Spring Creek could reasonably assume that Kuzara would not file a claim with the State Fund. Additionally, after thirty days, Kuzara would be statutorily barred from filing a claim with the State Fund. Spring Creek was aware of this

12

fact and also knew that Kuzara was unaware of the consequences of filing a claim with Aetna.

Third, Kuzara did not know the truth concerning Spring Creek's representation and concealment at the time her claim was filed with Aetna. Kuzara did not know what the Aetna policy said or that she had to report her work-related injury to Spring Creek or the State Fund within thirty days in order to receive workers' compensation benefits.

Fourth, Spring Creek encouraged Kuzara to file a nonwork-related claim with Aetna, expecting that she would file a claim with Aetna and not report her work-related injury to the State Fund. Spring Creek also knew or should have known that after Haugen represented that Spring Creek would take care of everything, Kuzara would not report her injury to the State Fund.

Fifth, Kuzara relied on Haugen's representation that Spring Creek "would take care of everything. They would handle it all."

Sixth, by acting on Spring Creek's representation, Kuzara acted in a manner which changed her position for the worse. Believing that Spring Creek would take care of everything and that Aetna would cover her injury, Kuzara did not file a claim with the State Fund until the thirty-day statutory notice period had expired. By relying on Spring Creek's representation, Kuzara was placed in a far worse position that she would have been in had she filed a timely claim with the State Fund.

Based on the record before this Court and unless rebutted by substantial credible evidence, Spring Creek's representation and concealment of material facts led Kuzara reasonably to believe that

13

she did not have to file a claim with the State Fund. Equitable estoppel would therefore be proper to prevent Spring Creek and the State Fund from claiming that Kuzara supplied improper notice under § 39-71-603, MCA (1993). Spring Creek encouraged Kuzara to file a nonwork-related injury claim with Aetna and also told Kuzara that it would "take care of everything." We hold that unless rebutted by Spring Creek and the State Fund, they are estopped from claiming that Kuzara provided insufficient notice of her work-related injury under § 39-71-603, MCA (1993). As with the issue of notice, respondents should have the opportunity to present evidence during their case-in-chief to rebut the issue of estoppel.

We emphasize that this holding is limited to the narrow facts of this case. The notice Kuzara supplied to her employer was not by any means perfect and is not a model by which employees should notify their employers about work-related injuries.

Remanded to the Workers' Compensation Court for a continuation of the trial and with respondents to be given the opportunity to present evidence rebutting Kuzara's claim that she supplied adequate notice of her injury to Spring Creek and to rebut the issue of estoppel.

_____
Chief Justice

14

We concur:

_____
Jim Trieweiler

_____
William E Hunt Sr

_____
W. William Leaphart
   Justices

15

Justice Karla M. Gray, dissenting.

I respectfully dissent from almost the entirety of the Court's opinion. Indeed, it is my view that the opinion is so riddled with error as to be difficult to address. My concerns begin with the "Factual Background" set forth by the Court and are heightened by the Court's discussion of both the issue which is actually before us and the issue which is not, but which the Court inexplicably feels compelled to raise and address.

The Court begins by reciting purported "facts" at some length, observing both there and later in its opinion that the Workers' Compensation Court determined that Kuzara was credible. It is important to note that the trial court's credibility determination was limited to her testimony regarding matters at issue in its consideration of the State Fund's motion for directed verdict; namely, the conversations with various people at Spring Creek Coal on which she relied in attempting to establish that she had provided sufficient notice. Contrary to the Court's implicit suggestion, the Workers' Compensation Court did not "find" all of her testimony credible in all particulars; indeed, it could hardly have done so since the State Fund had not presented its version of the "facts." Moreover, the Court's suggestion that, in successfully obtaining a directed verdict on the notice issue without the necessity of putting on its case, the State Fund somehow <u>chose</u> not to rebut or contradict the portions of Kuzara's

16

testimony which did not relate specifically to the notice question at issue in its motion for directed verdict is disingenuous at very least. Kuzara's testimony on matters apart from the conversations she had with Spring Creek personnel within 30 days of the date of her alleged injury does not establish "facts" for any purpose other than determining whether the notice required by § 39-71-603, MCA (1993), was given and is not relevant to the issue before us as stated at the outset of the Court's decision.

I also disagree with the standard under which the Court has chosen to review the Workers' Compensation Court's decision in this matter. The issue before us is whether that court erred in directing a verdict on the notice question. Our standard in reviewing a court's decision to direct a verdict certainly is not whether the court's decision is "clearly erroneous." Nor do I agree that the Workers' Compensation Court's determination that Kuzara presented insufficient evidence to establish notice is a "finding of fact" subject to the clearly erroneous standard of review. Questions relating to the sufficiency of the evidence to meet statutory requirements are questions of law subject to de novo review by this Court to determine whether they are correct. Thus, while I recognize that matters relating to standards of review often seem esoteric or unimportant to some, I register my strenuous objection to what the Court is doing here in applying an incorrect standard of review.

The reason the standard of review matters here is this: under

17

the standard for reviewing findings of fact, this Court need not rely on any legal authority in support of its ultimate conclusion regarding whether the trial court's findings of fact are sufficiently supported by the record. That is, under the "clearly erroneous" standard, we need only review the record and apply the three-part clearly erroneous test. The Court apparently chooses this standard here because--as will become more apparent later-- no legal authority exists for the conclusion it reaches. The only way in which the Court can reach the result it seeks is to skewer the standard of review. I cannot agree.

In addition to applying the wrong standard of review, the Court also misapplies the "clearly erroneous" standard it has chosen. It never determines, pursuant to the first prong of that test, whether the trial court's alleged "finding" is supported by substantial credible evidence; instead, it proceeds directly to its determination--under the second part of the "clearly erroneous" standard of review--that the Workers' Compensation Court "misapprehended the effect of the evidence" before it relating to notice. One can only suppose that this is because the Court is aware that the decision it purports to review as a "finding of fact" is not a factual finding at all and, therefore, is not susceptible to a record review to determine whether it is supported by substantial credible evidence.

I do agree with two portions of the Court's opinion. First, immediately below its "Discussion" heading, the Court correctly

states the issue before us as whether the Workers' Compensation Court erred in granting the State Fund's motion for a directed verdict based on its conclusion that Kuzara provided her employer with insufficient notice of an injury under § 39-71-603, MCA (1993). Second, the Court correctly quotes the applicable statute.

The problem is that no further mention of the law--either the statute and its requirements or our cases thereunder--appears in the Court's resolution of the issue before us. The Court does not even bother to try to apply the language of the statute to Kuzara's testimony to determine the legal question of whether her conversations constituted notice as defined by the statute. The Court's failure to include even a shred of legal support for the result it reaches here is both transparent and irresponsible.

Applying the statutory terms only briefly here, it is clear from Kuzara's testimony--as quoted by the Court--that she did not notify Spring Creek Coal or the State Fund of "the time and place where the accident occurred and the nature of the injury . . . " within 30 days. See § 39-71-603, MCA (1993). It is also clear that neither the employer nor the employer's managing agent or superintendent in charge of the work upon which Kuzara was engaged at the time of the injury had "[a]ctual knowledge of the accident and injury[,]" as alternatively required by § 39-71-603, MCA (1993).

Instead of applying these statutory requirements to the evidence before it, the Court simply ignores them. In an apparent

19

effort to buttress its totally insupportable resolution of the issue, it goes on to state that Izzard "could have learned more" by contacting Bebee. It cites to no authority under which the employee's obligation to provide legally sufficient notice directly, or at least establish the employer's actual knowledge pursuant to the statute, can be "transferred" to the employer. Nor does it cite to any authority under which an employee's legally insufficient notice becomes sufficient as a matter of law where the employer may have had the means to acquire additional information about the accident and injury. The reason for this total absence of authority is clear: no such legal authority exists.

Furthermore, the Court's statement--at the end of its discussion of the issue before us--that Spring Creek Coal and the State Fund should have an "opportunity to rebut" Kuzara's "sufficient evidence of notice" on remand is apparently intended to suggest that the notice issue remains unresolved. The suggestion is an empty one. As discussed above, Kuzara's testimony about the extent of the notice she gave--taken as true by the Workers' Compensation Court, this Court and myself--is insufficient as a matter of law to constitute the notice required by § 39-71-603, MCA (1993). It does not need to be rebutted. The Court's suggestion is merely another outgrowth of its application of the wrong standard of review to the issue before us.

The Court states that, on September 20, 1993, Kuzara informed a Spring Creek supervisor of the details of the July 18 incident.

20

The Court also correctly observes that this was the first such notification by Kuzara of the time, place and nature of her injury. It is clear that this notification was not made within the statutorily-mandated thirty-day period for notice. The Court simply refuses to apply the law to these facts. Applying § 39-71-603, MCA (1993), to the facts regarding notice set forth in Kuzara's testimony, I would affirm the Workers' Compensation Court.

Finally, I feel compelled to address the Court's "equitable estoppel" discussion. This issue is not before the Court. It was neither raised nor argued in the Workers' Compensation Court and is neither raised nor argued in this Court. Simply put, the Court has "created" this issue out of whole cloth and then resolved it, apparently recognizing that its discussion and resolution of the issue actually before us is transparently incapable of standing alone. Moreover, the Court performs this feat of prestidigitation based on the so-called "facts" in Kuzara's testimony. There are no facts of record regarding this issue never raised or tried in the Workers' Compensation Court, however. Likewise, there is no decision by that court for us to review.

This Court raises the issue, makes findings of fact regarding lack of knowledge by Kuzara which even Kuzara's own testimony does not support, makes further findings regarding Spring Creek's knowledge from a nonexistent record, and then resolves the question. To say that this entire portion of the Court's opinion is dicta is true; the Court resolved the only issue before it--

albeit erroneously--before reaching out and creating this issue from thin air. But to say that this part of the opinion is dicta is an understatement. This is as extreme an example of lack of respect and regard for this Court's proper role as I have ever seen.

The Court's opinion in this case raises "result oriented" opinion writing to an art-form.

I dissent.

_____
Justice

Justices James C. Nelson and Charles E. Erdmann join in the foregoing dissent.

_____
Justices

22

November 14, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Elizabeth M. Kuzara
1501 Decker Road 338
Sheridan WY 82801


Charles G. Adams, Legal Counsel
State Compensation Insurance Fund
Box 4759
Helena MT 59604-4759

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy