No. 02-056

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 332

JOSEPH GEIGER,

        Petitioner and Appellant,

    v.

UNINSURED EMPLOYERS' FUND,

        Respondent and Respondent,

    and

DAVID DECKERT, d/b/a DAVID
DECKERT TRUCKING,

        Respondent and Employer.

FILED

DEC 2 0 2002

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    Workers' Compensation Court of the State of Montana,
                Honorable Mike McCarter, Judge Presiding

COUNSEL OF RECORD:

    For Appellant:

        Marvin L. Howe, Navratil, Herring & Howe, Glendive, Montana

    For Respondent:

        Daniel B. McGregor, Department of Labor and Industry Legal Services
        Division, Helena, Montana

        Richard L. Burns, Attorney at Law, Glendive, Montana

                Submitted on Briefs:  June 27, 2002

                    Decided:  December 20, 2002

Filed:

_____
               Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant Joseph Geiger (Geiger) appeals from the Workers' Compensation Court's judgment dated August 22, 2001, where the Workers' Compensation Court ruled that Geiger was not an employee at the time of his injury and therefore was not entitled to compensation from the Uninsured Employers' Fund (UEF). We affirm.

¶2 Geiger presents the following three issues on appeal:

¶3 1. Did the Workers' Compensation Court err in concluding that David Deckert d/b/a David Deckert Trucking was not an "employer" as defined by § 39-71-117(1) and (4), MCA (1997)?

¶4 2. Did the Workers' Compensation Court err in concluding that Geiger was not an "employee" or "worker" as defined by § 39-71-118(l)(a), MCA (1997)?

¶5 3. Did the Workers' Compensation Court err in concluding that neither the UEF nor Deckert was equitably estopped from denying compensation for Geiger's injuries?

## Background

¶3 In March of 1997, Geiger was hired by David Deckert (Deckert), d/b/a David Deckert Trucking (Deckert Trucking), an interstate trucking business under authority from the Interstate Commerce Commission (ICC). In late 1997, Deckert financed the purchase of a second truck and leased a second trailer. Geiger began driving the second truck and leased trailer. In 1998, Deckert's attorney drafted an independent contractor agreement for Geiger. Although he was repeatedly asked to do so, Geiger never signed the agreement. Finally,

2

Deckert started withholding taxes and social security from Geiger's wages, and in May 1998, he obtained workers' compensation coverage for Geiger.

¶ 4    A couple of months later, Geiger and Deckert discussed Geiger's purchase of the second truck. Because Geiger was unable to secure adequate financing, the two parties entered into a sales contract whereby Geiger paid monthly installments to Deckert who in turn paid the original lender. The contract provided that Geiger would pay the insurance premiums, maintenance, license fees and fuel costs for the truck. The parties also entered into a lease agreement that required Geiger to pay the license fees, insurance, and maintenance of the trailer. Both the contract and the lease agreement specifically provided that during the terms of the agreements Geiger was required to operate the tractor and trailer under Deckert Trucking's ICC authority, because Deckert recognized that until the truck was in Geiger's name, Geiger could not license and insure the truck, nor get his own ICC authority required for certain interstate hauls. Deckert's attorney drafted the sales contact and lease agreement in September of 1998; however, they were not signed until April 1, 1999.

¶ 5    At the time the contract and lease were signed, Deckert notified Geiger that Deckert had stopped payroll withholdings and had quit paying workers' compensation premiums for Geiger. Even prior to the signing of the sales contract and lease agreement on April 1, 1999, and at least as early as October 1998, Geiger arranged his own loads. A substantial part of Geiger's hauls were arranged by Geiger without the aid of Deckert, and in many cases clients

paid Geiger directly. Geiger also arranged brokerage loads by contacting the brokerage firms directly. Deckert's involvement was limited to notifying the brokers that Geiger was operating under Deckert's ICC authority. Payments for loads arranged through brokerage firms were typically remitted to Deckert. After April 1, 1999, Deckert deducted amounts due to himself under the truck contract and lease from the amounts received for loads driven by Geiger. Most importantly, Deckert did not take a percentage or fee for loads and made no profit with respect to Geiger's trucking operations.

¶ 6 The amounts received by Deckert were insufficient to cover Geiger's payments under the contract and lease. As a result, Deckert fell behind in his payments to the original lender. On June 23, 1999, Deckert informed Geiger that the monies received were insufficient to cover Geiger's expenses. Two days later, while driving the truck through Illinois, Geiger sustained a closed head injury when he fell ten feet from the top of his tractor trailer to the concrete. At the time he was injured, Geiger was hauling a load for ProAm, a brokerage company, pursuant to Deckert's ICC authority. Deckert did not have workers' compensation insurance coverage at the time of Geiger's injury.

¶ 7 On October 21, 1999, Geiger filed a First Report of Injury with the Montana Department of Labor and Industry which was routed to the Uninsured Employers' Fund on November 2, 1999, because Deckert was uninsured. Initially, the UEF was unable to make a compensability determination without additional investigation; however, it paid benefits to Geiger under a full reservation of rights pursuant to § 39-71-608, MCA (1997). After an

4

investigation, the UEF denied coverage for the claim based upon its conclusion that Geiger did not suffer a compensable work-related injury and that he was not working as an employee of Deckert at the time of his claimed injury. The UEF officially denied Geiger coverage on April 10, 2000.

¶ 8 Geiger appealed the UEF's determination to the Workers' Compensation Court. At trial, the UEF defended its initial denial, reasoning that Geiger was not an "employee or worker in this state" as required by § 39-71-118(10)(a), MCA (1997). Conversely, during the trial Deckert argued that Geiger was precluded from workers' compensation benefits because Geiger was an independent contractor as defined in § 39-71-120, MCA (1997).

¶ 9 The Workers' Compensation Court ruled that Deckert was not an "employer," and that Geiger was not his "employee" as defined in the Workers' Compensation Act. Therefore, it concluded that Geiger was not eligible for benefits under the Act. The Workers' Compensation Court did not address the issue of whether Geiger was an independent contractor. Geiger filed a timely post-trial motion in which he raised the issue of equitable estoppel. The Workers' Compensation Court denied Geiger's motion for reconsideration and rejected the equitable estoppel argument. Following the timely filing of this appeal, David Deckert passed away and his estate elected not to participate further.

## Standard of Review

¶ 10 This Court employs two standards of review for decisions of the Workers' Compensation Court: we review the findings of fact to determine if they are supported by

5

substantial, credible evidence, and we review conclusions of law to determine if they are correct. *Hale v. Royal Logging*, 1999 MT 302, ¶ 11, 297 Mont. 165, ¶ 11, 990 P.2d 1245, ¶ 11; *Turjan v. Valley View Estates* (1995), 272 Mont. 386, 390, 901 P.2d 76, 79.

## Discussion

¶ 11    Workers' compensation benefits are determined by the statutes in effect as of the date of injury. *Buckman v. Montana Deaconess Hosp.* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. The 1997 version of the Act applies since it was in effect at the time of Geiger's injury. Accordingly, all statutory references hereinafter will be to the 1997 version of the Act unless otherwise indicated.

## Issue 1

¶ 12    Did the Workers' Compensation Court err in concluding that Deckert was not an "employer" as defined by § 39-71-117(1) and (4), MCA?

¶ 13    The resolution of this case involves the interpretation and application of §§ 39-71-117 and 39-71-118, MCA, which define "employer" and "employee" under the Montana Workers' Compensation Act. Because the Act "applies to all employers, as defined in 39-71-117, and to all employees, as defined in 39-71-118," these provisions indirectly establish who must provide workers' compensation coverage and what workers are covered under the Act. Section 39-71-401(1), MCA.

¶ 14    Two subsections of § 39-71-117, MCA, defining "employer" apply to the case at bar. The first definition is specific to interstate motor carriers such as Deckert Trucking. It

6

provides that "(4) [a]n interstate or intrastate common or contract motor carrier doing business in this state who <u>uses</u> drivers in this state is considered the employer, [and] is liable for workers' compensation premiums . . . ." Section 39-71-117(4), MCA (emphasis added). Applying this definition to the facts before it, the Workers' Compensation Court found that Deckert Trucking was doing business in Montana, that it was an interstate contract motor carrier, and that Geiger drove within Montana; however, the Workers' Compensation Court ultimately concluded that Deckert did not "use" Geiger and therefore was not his employer under this definition.

¶ 15   In concluding that Deckert did not "use" Geiger in his interstate trucking business, the Workers' Compensation Court focused on whether Geiger had benefitted Deckert. The findings of the Workers' Compensation Court indicated that Deckert had not received any percentage or other fee for the loads carried by Geiger, and that he had not received any financial benefit from Geiger's actual expenses of operating the truck since the signing of the contract and lease on April 1, 1999. Because the Workers' Compensation Court was "unable to discern any 'use' to which Deckert put Geiger after they entered into the truck and trailer contract and lease," the Workers' Compensation Court held that Deckert was not an employer under § 39-71-117(4), MCA.

¶ 16   The Workers' Compensation Court then applied a second, more general definition of "employer" which defines an employer as one who "has a person <u>in service</u> under an appointment or contract of hire . . . ." Section 39-71-117(1)(a), MCA (emphasis added).

7

Applying the same reasoning mentioned in the preceding paragraph, the Workers' Compensation Court ruled that Geiger was not in service to Deckert. Accordingly, the Workers' Compensation Court held that Deckert was not an employer under the Act.

¶ 17 Geiger maintains that the Workers' Compensation Court erred in concluding that Deckert was not an employer under the Act. First, Geiger argues that the Workers' Compensation Court's interpretation of "use" in the first definition is too narrow because it requires an employee to financially benefit or profit his employer. Geiger asserts that the Workers' Compensation Court's interpretation of "use" would allow a floundering business to avoid paying workers' compensation premiums for its employees solely because it was not turning a profit.

¶ 18 Because the resolution of this issue is dependent on the meaning of the word "use" in § 39-71-117(4), MCA, we look to the rules of statutory construction which require the language of a statute to be construed according to its plain meaning. If the language is clear and unambiguous, no further interpretation is required. *Rausch v. State Compensation Ins. Fund*, 2002 MT 203, ¶ 33, 311 Mont. 210, ¶ 33, 54 P.3d 25, ¶ 33; *Lovell v. State Compensation Mut. Ins. Fund* (1993), 260 Mont. 279, 285, 860 P.2d 95, 99.

¶ 19 In the instant case, we believe that the statutory language of § 39-71-117(4), MCA, is clear. "Use" is defined as "to put into service or apply for a purpose; employ . . . ." AMERICAN HERITAGE DICTIONARY 1966 (3d ed. 1992). The verb "use" in the statutory context of the Workers' Compensation Act means that the employer utilizes the driver to

8

serve an end, a purpose. Geiger contends that Deckert "used" him for the purpose of making payments to the original creditor and in turn increasing Deckert's equity in the second truck. However, the fact that Geiger made a number of monthly payments under the contract and lease does not mean that Deckert used him to serve Deckert's trucking business. This "benefit" received by Deckert was contemplated in their sales contract and lease agreement –not in a contract for hire. In fact, as of April 1, 1999, Geiger and Deckert's relationship more closely resembles that of debtor and creditor. We cannot hold that Deckert "used" Geiger under this definition of employer simply because Deckert received monthly installments according to a contract. If we were to make such a ruling, then any party facilitating the payment on a contract for the sale of equipment could be required to pay workers' compensation premiums for the debtor. Obviously, this is not the intent of the Act.

¶ 20 The trial court's reasoning that because Deckert did not use Geiger, Geiger was not in Deckert's service, is also sound. Accordingly, we agree with the Workers' Compensation Court that Deckert did not use Geiger, that Deckert did not have Geiger in service, and thus Deckert was not an employer under either definition.

<u>Issue 2</u>

¶ 21 Did the Workers' Compensation Court err in concluding that Geiger was not an "employee" or "worker" as defined by § 39-71-118(1)(a), MCA?

¶ 22 Because we have ruled that Deckert was not Geiger's employer, we need not consider whether Geiger was Deckert's employee.

9

¶ 23   Did the Workers' Compensation Court err in concluding that neither the UEF nor Deckert was equitably estopped from denying compensation for Geiger's injuries?

¶ 24   Lastly, Geiger contends that Deckert and the UEF should be equitably estopped from denying his claim. "Equitable estoppel applies when an employer . . . has taken some positive action which either prevents a claimant from filing a timely claim or leads the claimant reasonably to believe she need not file such a claim." *Kuzara v. State Compensation Ins. Fund* (1996), 279 Mont. 223, 231, 928 P.2d 136, 141. One of the six requirements for the application of the doctrine of equitable estoppel is conduct amounting to a representation or a concealment of material facts. *See Kuzara*, 279 Mont. at 231, 928 P.2d at 141.

¶ 25   Geiger insists that Deckert concealed from him the fact that Deckert had discontinued paying for Geiger's workers' compensation coverage. To that end, Geiger categorically denies that he was ever notified by Deckert that he would no longer be paying Geiger's premiums. The Workers' Compensation Court was not convinced by Geiger's testimony on this matter; instead it was "persuaded that at that time [April 1, 1999] Geiger understood that any workers' compensation insurance was his responsibility." Therefore, because Deckert had not concealed or misrepresented that he had ceased paying for Geiger's coverage, it ruled that Deckert and the UEF were not equitably estopped from denying Geiger's claim.

¶ 26   We have reviewed the record and believe that the Workers' Compensation Court based its conclusion on substantial credible evidence, specifically Deckert's testimony that he had notified Geiger that he was no longer paying for Geiger's workers' compensation coverage at the time the contract and lease were signed. When, as here, the trial court is the trier of fact, it is in the best position to determine the facts by assessing the demeanor of the witnesses, the testimony presented and the totality of the evidence before the court. *See Yellowstone Basin Properties, Inc. v. Burgess* (1992), 255 Mont. 341, 352, 843 P.2d 341, 348 (quoting *General Mills, Inc. v. Zerbe Bros., Inc.* (1983), 207 Mont. 19, 23, 672 P.2d 1109, 1111). We will not disturb the Workers' Compensation Court's finding. Because Geiger knew that Deckert had discontinued paying for his workers' compensation coverage, his estoppel argument necessarily fails; at the very least, one of the six elements required for the doctrine's application is not present. This Court need not address the five remaining elements of equitable estoppel. Therefore, we hold that the Workers' Compensation Court did not err in concluding that neither the UEF nor Deckert was equitably estopped from denying compensation for Geiger's injuries.

¶ 27   The order of the Workers' Compensation Court is affirmed in its entirety for the reasons discussed above.

_____
Justice

11

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

12

Justice Terry N. Trieweiler dissenting.

¶28    I dissent from the majority's Opinion. I would reverse the judgment of the Workers' Compensation Court.

¶29    The Workers' Compensation Court and the majority have correctly identified the narrow issue in this case. It is simply whether at the time of his injury the claimant, Joseph Geiger, was being "used" as a driver by David Deckert, d/b/a David Deckert Trucking. Accepting the majority's definition of used as "to put into service or apply it for a purpose; . . . ." it is clear that Geiger was serving a purpose for Deckert at the time of his injury. In fact, the nature of Geiger's and Deckert's relationship changed in no substantive way from the period prior to March of 1999 when Deckert carried workers' compensation insurance for Geiger and considered him an employee and the date of Geiger's injury on June 25, 1999.

¶30    At the time of Geiger's injury, the tractor and trailer that he was operating were still owned by Deckert; it was still insured by Deckert; it was still being operated pursuant to Deckert's interstate commerce commission authority; the brokers through whom jobs were obtained still recognized Deckert as the trucking operator and all payments which came from those brokers went directly to Deckert who then controlled the disbursement of those funds by making the lease payments, depositing $500 a month in an escrow account, paying various expenses associated with the truck's operation, and making payments for the truck which were actually owed by Deckert to a third party.

¶31    From October of 1998 through June of 1999, Geiger paid to Deckert at least $16,080.25 for the payments mentioned in the previous paragraph. These payments were of

13

"use" to Deckert because he used them to maintain his tractor, lease his trailer, reduce the debt on his tractor and fund an escrow account for necessary repairs to the tractor and trailer in the event that they were eventually returned to him by Geiger. It could not be more obvious that Deckert was an interstate common contract motor carrier who "used" Geiger. Therefore, by the plain language of § 39-71-117(4), MCA (1997), Geiger was Deckert's employer.

¶32 In ¶ 5, the majority attaches significance to the fact that Deckert made no profit from Geiger's trucking operations. The reason is self evident from the first sentence in the following paragraph. The amount that Geiger was able to generate was insufficient to cover the payments for the tractor and trailer and its expenses. However, the mere fact that the operation was unprofitable should not determine the nature of the parties' relationship. Geiger still prolonged the period of time over which Deckert was able to own the tractor and trailer which he would have to have returned to the third party earlier had Deckert not operated it for him and provided him with most of the income from his operations.

¶33 In ¶ 19, the majority states that, "the fact that Geiger made a number of monthly payments under the contract and lease does not mean that Deckert used him to serve Deckert's trucking business." However, I disagree. The fact that Geiger made a number of monthly payments under the contract and provided other income which allowed for the maintenance, operation and insurance of the tractor and trailer which was owned by Deckert and operated by Deckert's trucking business, did serve his interest. As stated earlier, if Geiger had not provided the revenue to pay these expenses, Deckert would have to have

14

returned the truck to the party to whom he was making payments months earlier than he, in fact, did return it.

¶34 Finally, in ¶ 19, the majority states that if the Court was to hold that receiving monthly installments according to a contract satisfied the definition of "used," then "any party facilitating the payment on a contract for sale of equipment could be required to pay workers' compensation premiums for the debtor." That observation is a gross simplification of Geiger's and Deckert's financial relationship and, at the same time, a broad expansion of the application of § 39-71-117(4), MCA (1997). First, Geiger was not simply making monthly installments according to a purchase contract. All of the income that he earned from jobs arranged by brokers was sent directly to Deckert who then used that money to make the payments he owed for his truck, to make lease payments on the trailer, to pay for insurance for the truck and trailer and to pay operating and maintenance expenses. Second, to hold that Deckert's total dependency on Geiger for revenue with which to pay for and maintain his truck would open the flood gates of workers' compensation litigation to "any party facilitating the payment on a contract for the sale of equipment" ignores the fact that "used" is only significant for purposes of the definition of employer found at § 39-71-117(4), MCA, which pertains only to interstate motor carriers such as Deckert Trucking. One of the reasons for providing broad coverage for drivers who are used by interstate motor carriers is the history of creative methods in the trucking industry for avoiding an employer's workers' compensation responsibilities. Deckert's demand that Geiger sign an agreement that he was an independent contractor before the sales contract was ever executed is just one example.

15

¶35 The majority Opinion exalts form over substance and falls victim to another smoke and mirror method of avoiding coverage for the state's injured workers.

¶36 For these reasons, I dissent from the majority Opinion. I conclude, based on the undisputed facts, that Geiger was Deckert's employee at the time of his injury and would, therefore, reverse the judgment of the Workers' Compensation Court.

_____
Justice

Justices Jim Regnier and Jim Nelson join in the foregoing dissent.

_____
Justice

_____
Justice