No. 03-067

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 290

RITA LAKO,

   Appellant,

 v.

EMPLOYMENT RELATIONS DIVISION
UNINSURED EMPLOYER' FUND,

   Respondent.


APPEAL FROM: Workers' Compensation Court, Cause No. WCC 2000-0183
      The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

   For Appellant:

     Stuart C. Mackenzie, Burns Solem & Mackenzie, Chinook, Montana

   For Respondent:

     Julia W. Swingley, Department of Labor & Industry, Helena, Montana


         Submitted on Briefs: October 24, 2003

           Decided: October 19, 2004


Filed:

      _____
            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Rita Lako appeals the Workers' Compensation Court's affirmance on judicial review of the denial of her claim against the Uninsured Employers' Fund ("UEF") by the Hearings Bureau of the State of Montana Department of Labor and Industry, on the grounds that her application for benefits was untimely. We affirm.

## ISSUES

¶2 1. Did the Workers' Compensation Court err in finding that Lako failed to establish the first element of equitable estoppel?

¶3 2. Did the Workers' Compensation Court err in finding that Lako should have inquired into and challenged the UEF's interpretation of the UEF statutes in 1984, thereby satisfying element three of equitable estoppel?

¶4 3. Was § 39-71-510, MCA, intended to keep the UEF functioning and solvent during periods when claims exceeded income?

¶5 Because we have concluded that Issue One is dispositive, we do not address Issues Two and Three.

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 Rita Lako was injured on September 27, 1984, while employed by Robert Sivertsen of Sivertsen Ranches in Chinook. She suffered a broken ankle, and was treated by a doctor in Chinook immediately after the accident.

¶7 Lako discovered that her employer did not have Workers' Compensation coverage. On October 4, 1984, the doctor submitted a bill for his services to the UEF. That same day,

2

Lako's husband David contacted the UEF and was informed that the UEF was not currently paying benefits as the fund was insolvent. David was informed that Lako could opt to pursue a claim against Sivertsen instead. At that time, Lako did not pursue UEF benefits.

¶8    By way of background, the UEF was created in 1977, as a safety net for workers injured while working for uninsured employers, to provide benefits for employees whose employers failed to provide workers' compensation coverage. Funded by penalties and reimbursement from uninsured employers, who often are insolvent, the legislature recognized that claims against the UEF could outstrip its ability to pay. The legislature codified contingencies for this scenario, by requiring $150,000 in start-up capital, maintenance of "[p]roper surpluses and reserves," and proportionate reductions in benefits in the event that the UEF did not have the funding to pay all claims in full. These provisions were part of the original Act which established the UEF, 1977 Mont. Laws, ch. 550, and which were eventually codified in Title 39, Chapter 71, MCA.

¶9    In 1981, the administrator of the UEF determined that there were inadequate funds on hand to pay all benefits and proportionately reduced benefits by one hundred percent. In other words, payment of all benefits ceased. The UEF continued to receive monies from penalties; however, it still paid no benefits because, according to its accounting, its projected liability for claims continued to exceed the accumulated funds on hand. In 1987, the legislature addressed the divergence between the UEF revenues and liabilities by repealing the surplus and reserve requirement and directing the UEF to make payments as funds became available. The UEF resumed paying benefits on July 1, 1987.

¶10 On August 19, 1992, Lako filed a written claim for compensation with the UEF. Although § 39-71-601(1), MCA, requires that a claimant file a claim for compensation within one year of the work-related injury, Lako argued that the UEF should be equitably estopped from imposing the one-year claim-filing requirement as a defense, because it misrepresented its insolvency and, in fact, should have been paying a portion of benefits from 1981 until 1987, instead of ceasing to pay benefits entirely. On October 1, 1992, the UEF denied the claim since it had not been filed within one year of the work-related injury. Following oral argument before a Hearings Officer of the Department of Labor and Industry Hearings Bureau, the department issued a Final Order denying Lako's claim for untimeliness on July 31, 2000. On October 25, 2002, the Workers' Compensation Court affirmed the decision of the Hearings Officer, finding that Lako's claim was untimely and barred by § 39-71-601(1), MCA. From this Order, Lako appeals.

**STANDARD OF REVIEW**

¶11 We review the findings of fact of the Workers' Compensation Court to determine if they are supported by substantial, credible evidence, and we review its conclusions of law to determine if they are correct. *Geiger v. Uninsured Employers' Fund*, 2002 MT 332, ¶ 13, 313 Mont. 242, ¶ 13, 62 P.3d 259, ¶ 13 (citations omitted).

**DISCUSSION**

¶12 Did the Workers' Compensation Court err in finding that Lako failed to establish the first element of equitable estoppel?

4

¶13     The Workers' Compensation Court held that, while the UEF's action in cutting off all benefits from 1981 until 1987 was questionable under the statutes which were applicable at that time, it did not need to reach that issue since Lako had failed to prove that the UEF should be equitably estopped from asserting the untimeliness of her filing of a claim. Specifically, the Workers' Compensation Court found that Lako had failed to prove the first element of an equitable estoppel claim, in that she had failed to prove that the UEF misrepresented a material fact.

¶14     To show equitable estoppel, the following elements must be proven by clear and convincing evidence:  (1) there must be conduct--acts, language, or silence--amounting to a misrepresentation or a concealment of a material fact; (2) the facts must be known by the party to be estopped at the time of that party's conduct, or at least the circumstances must be such that knowledge of the facts is necessarily imputed to that party; (3) the truth must be unknown to the other party at the time the representation was acted upon; (4) the representation must be made with the intent or the expectation that it will be acted upon by the other party; (5) the representation must be relied upon by the other party, leading that party to act upon it; and (6) the other party must in fact rely on the representation so as to change its position for the worse. *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 30, 321 Mont. 432, ¶ 30, 92 P.3d 620, ¶ 30 (citations omitted).

¶15     At issue in this case is whether Lako has proven the first element of equitable estoppel.  She claims that when her husband spoke to a representative of the UEF on October 4, 1984, the UEF misrepresented that it was insolvent and that it did not have adequate funds

to pay claims, when in fact the UEF was solvent and could have chosen to pay benefits to claimants at a reduced rate. She states that this alleged misrepresentation or concealment of a fact dissuaded her from filing her claim within the statutory time period, and thus the UEF should be equitably estopped from using the one-year statutory time frame to bar her claim. Lako further asserts that in 1984, the UEF neither told her to file a claim nor offered her a claim form.

¶16 Lako maintains that the misrepresentation at issue is not that the UEF was not paying benefits in 1984, but rather that the UEF was insolvent. She challenges the claim that the UEF was insolvent and that it had inadequate funds to pay any benefits at that time. She notes that in a 1987 deposition in connection with a different party's lawsuit against the UEF, Karen Sue Doig, who was an investigator with and later the supervisor of the UEF, admitted that some claimants, upon learning that the UEF was not paying benefits, did not "bother to fill out the paperwork," and that, "[t]here were quite a few claims that were never filed with us." Thus, Lako argues, representations made by UEF personnel dissuaded some potential claimants from filing their claims.

¶17 The UEF responds that Lako did not prove any misrepresentation or concealment of material facts by the UEF. In 1984, the UEF told Lako that it was not paying benefits and that Lako could pursue a claim against her employer. Both statements, the UEF maintains, were true. In its response Brief to this Court, the UEF states,

> Lako does not claim that material facts known to the UEF were concealed from her in response to her 1984 claim. Instead, she simply suggests that the UEF could have done things differently if it had chosen an interpretation of the

6

law closer to the one she advocates here, but because the UEF did not do so, it concealed or misrepresented material facts from her.

¶18    Section 39-71-601, MCA, provided at the time of Lako's injury, and continues to provide, that a claimant must file a written claim for compensation within one year. The provision is made applicable to claims against the UEF through § 39-71-505, MCA, which provides that all appropriate provisions of the Workers' Compensation Act also apply in the same manner to the UEF. The Workers' Compensation Court noted that the version of § 39-71-601, MCA, which was in effect in 1984, provided an exception which could extend this time frame for an additional 24 months; however, even if the exception was applied, Lako cannot avail herself of it because she did not file her claim until 1992, well outside the three-year limit.

¶19    We have held that the doctrine of equitable estoppel applies where an employer or insurer has taken some positive action which either prevents a claimant from filing a timely claim or leads him reasonably to believe he need not file such a claim. *Davis v. Jones* (1983), 203 Mont. 464, 466, 661 P.2d 859, 860 (affirmed on appeal after remand at 216 Mont. 300, 701 P.2d 351) (citation omitted). Equitable estoppel is a flexible principle which should be applied when an employer or insurer misleads a claimant by foisting onto the claimant a misinterpretation of the Workers' Compensation Act. *Davis*, 203 Mont. at 466-67, 661 P.2d at 860.

¶20    The problem with Lako's position is that, while the UEF arguably *could have* paid *some proportion* of benefits in 1984, it was not doing so. According to its own interpretation

7

of the statutes requiring it to maintain surpluses and reserves, and according to its own accounting practices, the UEF was insolvent and was not paying any benefits at that time. It was this information which the UEF gave to Lako. Lako could have chosen to make a claim against her employer, or she could have chosen to file a claim with the UEF in anticipation of the UEF resuming payment of benefits at some future date. Lako did neither, and in fact did not apply to the UEF until 1992, more than eight years after she was injured within the scope of her employment. While Lako may have decided not to file a claim after she was informed that the UEF was not paying benefits at that time, this was not a misrepresentation on the part of the UEF. It truly was not paying benefits in 1984 and in fact paid no benefits until July 1, 1987.

¶21 Thus, we agree with the finding of the Workers' Compensation Court that the UEF did not misrepresent or conceal a material fact from Lako. Because Lako is unable to meet the first element of a claim for equitable estoppel, the UEF is not precluded from asserting that Lako's claim is time-barred by § 39-71-601, MCA. The time bar applies.

## CONCLUSION

¶22 For the foregoing reasons, we affirm the Order and Judgment of the Workers' Compensation Court.

/S/ PATRICIA O. COTTER

We Concur:

/S/ JIM REGNIER

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM RICE